**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WANDA REAGEN, an individual,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AURORA LOAN SERVICES, INC., *et al.*,**<br><br>**Defendants.** | **1:09-CV-00839-OWW-DLB**<br><br>**MEMORANDUM DECISION RE: DEFENDANT AURORA LOAN SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. 8)** |

## I. INTRODUCTION

Before the court for decision is Defendant Aurora Loan Services, Inc.'s ("Aurora") motion to dismiss Plaintiff Wanda Reagen's Complaint for failure to state a claim. Plaintiff, who entered into an "Adjustable Rate Note" loan agreement, brings this suit against Aurora, Aegis Wholesale Corporation ("Aegis"), and Capital Line Financial, LLC ("Capital Line") for violations of law related to disclosures about the loan.[1] Specifically, the Complaint alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and California's Unfair Business Practices Act, as well as financial elder abuse. Defendant Aurora moves to dismiss the Complaint in its entirety.

---

[1] Plaintiff refinanced the mortgage on her home (the "property"), located at 811 Augusta Hills Drive, Bakersfield, California. (Compl. ¶ 8.)

## II. FACTUAL BACKGROUND

On May 12, 2006, Plaintiff refinanced her existing home loan and entered into an "Adjustable Rate Note" agreement with Defendants Aegis and Capital Line, the loan originator and broker. (Compl. ¶ 8.) Plaintiff alleges that Defendant Aurora purchased the loan after the transaction was complete, with full knowledge that it was a "negative amortization loan" containing patent disclosure violations. (Id. ¶ 12.)

Plaintiff alleges that Capital Line promised a loan with low interest payments and substantially lower monthly payments, but was in fact charged with a loan "designed to allow lenders and mortgage brokers to deceive consumers." (Id. ¶ 10-11.) According to the Complaint, Capital Line and Aegis qualified Plaintiff for a negative amortization loan, but neither explained nor provided adequate disclosures on the negative amortization feature. (Id.) Plaintiff claims that the "statement provided to Plaintiff reveals that the loan contains a variable rate feature but makes no mention that the loan will negatively amortize." The Complaint further alleges:

> Plaintiff made it clear that she would not be able to make the minimum payment. Defendant Capital Line assured Mrs. Reagen that she could do so without consequence. Predictably, Plaintiff was confused and alarmed when she discovered that by making the minimum payment, interest was deferred and the principal balance had increased. Negatively Amortized loans put borrowers at a higher risk of default as negative equity is generated through minimum payments. For this reason, most consumers are unaware or do not fully understand the impact of the loan terms in negatively amortized loan. Mrs. Reagen is a victim of this misleading business practice.

(Id. ¶ 10.)

Plaintiff's suit primarily challenges the disclosures that

were provided with the loan. In particular, Plaintiff alleges that the disclosures related to negative amortization were misleading and unclear. The "Adjustable Rate Note" provided that, in return for the loan, Plaintiff promised to pay a principal of $360,000. (Id., Ex. 1, ¶ 1.) The principal amount might increase as provided in the Note, but would never exceed 115% of the principal amount Plaintiff originally borrowed. With respect to interest rate, the loan provided:

> (A) Interest Rate
>
> Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 1.750%. The interest rate I will pay may change....
>
> (B) Interest Rate Change Date
>
> The interest rate I will pay may change on the first day of July, 2006, and on that day every month thereafter. Each date on which my interest rate could change is called an 'Interest Rate Change Date.' ... The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.
>
> (C) Index
>
> Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index....
>
> (D) Calculation of Interest Rate Changes
>
> Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE and 45/100 percentage point(s) (3.450%) ('Margin') to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than 9.9500 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

(Id., Ex. 1, ¶ 2.)

The Note provides a number of terms with respect to monthly

payments, that the initial minimum monthly payments until the first Payment Change Date would be in the amount of $1,286.08 unless adjusted under Section 3(F). (Id. Ex. 1, ¶ 3(B).) The Note discloses that this monthly payment may change as required by Section 3(D) beginning on the first day of July 2007 and on that day every 12th month thereafter. Additionally, the payment would change any time Sections 3(F) or 3(G) required Plaintiffs to pay a different monthly amount. (Id. Ex. 1, ¶ 3(C).)

Paragraph 3(D) explains the calculation of monthly payments. It provides that, unless 3(F) or 3(G) applies, the amount of a new monthly payment effective on a payment change date would not increase by more than 7.5% of the prior monthly payment. This limit was known as the "Payment Cap." Id. Ex. 1, ¶ 3(D). Unless 3(F) or 3(G) requires payment of a different amount, the new minimum payment would be the lesser of (1) the amount provided by the "Payment Cap" and (2) the amount sufficient to repay the unpaid Principal that Plaintiffs are expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments, also known as the "Full Payment." (Id.)

Paragraph 3(G) provides that Full Payment was required as the Minimum Payment on the tenth Payment Change Date and each succeeding fifth Payment Change Date, until the monthly payment changed again. Id. Ex. 1, ¶ 3(G). Paragraph 3(F) provids, in effect, that once the unpaid Principal reaches the Maximum Limit (115% of the originally-borrowed Principal), Plaintiffs were required to pay the Full Payment amount as the Minimum Monthly Payment. (Id. Ex. 1, ¶ 3(F).) Additionally, after the first Interest Rate Change Date, the lender could provide Plaintiffs with

up to three additional payment options greater than the Minimum Payment: an interest-only payment, a fully amortized payment, and a 15-year amortized payment. (Id. Ex. 1, ¶ 3(H).)

The note also discloses how the unpaid Principal might increase:

> Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations discussed in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion, and will add the difference to my unpaid Principal[.]

(Id. Ex. 1, ¶ 3(E).)

Additionally, a "Disclosure Statement" in Plaintiff's Loan Origination File explains:

> You will have the choice each month of paying the lesser of the two payments, and if the limited payment is less than the full payment, you can choose to pay more than the limited payment up to and including the full payment for your monthly payment. If you pay an amount less than the full payment that would not be sufficient to cover the interest due, the difference will be added to your loan amount. This means that the balance of your loan could increase. This is known as 'negative amortization.'

(Request for Judicial Notice ("RJN"), Doc. 10, Ex. 5.[2])

The loan's "Truth In Lending Disclosure Statement" ("TILDS") stated that the Annual Percentage Rate, "the cost of your credit as a yearly rate," was 7.561%. (Id. Ex. 2.) The Payment Schedule

---

[2] Plaintiff's request for judicial notice of this document was GRANTED. See § IV(B), *infra*.

provided for 12 payments at $1,286.08 due beginning July 1, 2006; 12 payments at $1,382.54 due beginning July 1, 2007; 12 payments at $1,486.23 due beginning July 1, 2008; 12 payments at $1,597.70 due beginning July 1, 2009; 9 payments at $1,717.53 due beginning July 1, 2010; 302 payments at $3,080.08 due beginning April 1, 2011; and a final payment of $3,080.00 due on June 1, 2036. (Id.)

## III. PROCEDURAL BACKGROUND

On May 11, 2009, Plaintiff filed the instant action, alleging three causes of action: (1) Violation of Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(a); (2) Unlawful and Unfair Business Practices in Violation of California Business & Professions Code § 17200; and (3) Financial Elder Abuse in Violation of California Welfare and Institutions Code § 15610.30.

Plaintiff primarily seeks rescission of the "consumer credit transaction" under TILA. Plaintiff also seeks injunctive relief, statutory damages, and restitution of all monies unlawfully obtained from her. (Id. at 10:6-10:17.)

On August 12, 2009, Aurora filed this motion to dismiss Plaintiff's complaint. Aurora asserts that Plaintiff's suit should be dismissed with prejudice because the type of claims alleged are targeted "at the original lender - which was not Aurora." In any event, Aurora claims that Plaintiff is not entitled to rescind the loan agreement and has no basis to pursue a claim under Cal. Bus. & Prof. Code § 17200 or for financial elder abuse.

Plaintiff filed her opposition on October 19, 2009, arguing that she is entitled to rescission because she "was given a defective Truth in Lending Disclosure Statement, in direct

contravention of the Federal Truth in Lending Act."[3] Plaintiff also argues that her "UCL Claim" is not precluded and she has sufficiently pled a financial elder abuse cause of action.

## IV. LEGAL STANDARD

### A. *Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss can be made and granted when the complaint fails "to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990).

To sufficiently state a claim for relief and survive a 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949,

[3] Plaintiff's opposition did not comply with Eastern District Local Rules 5-133(a) & (d)(3). (See Doc. 14.)

173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation and quotation marks omitted).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations." *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see, e.g., Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.").

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

**B. *Defendant's Request For Judicial Notice***

In connection with its motion to dismiss, Defendant Aurora submitted a request for judicial notice pursuant to Fed. R. Evid. 201: (1) Deed of Trust (including an Adjustable Rate Rider), recorded on May 24, 2006, in the Official Records of Kern County, California; (2) Deed of Trust of Plaintiff's prior loan, recorded on October 28, 2003, in the Official Records of Kern County, California; (3) HUD-1 Statement showing that Plaintiff received over $235,000 in cash from Aegis Wholesale Loan; (4) Plaintiff's note to her lender stating that she refinanced in order to "complete some home improvement jobs and invest;" and (5) Program Disclosure signed by Plaintiff demonstrating that she received the negative amortization disclosure ("ARM Disclosure"). Plaintiff opposes the request as to documents (2)-(5), arguing that "these documents are not mentioned or even alluded to in the Complaint."

A court generally may not consider matters beyond the pleadings on a Rule 12(b)(6) motion, but "a document is not outside the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). In connection with the loan transaction at issue, Plaintiff executed an Adjustable Rate Note, Adjustable Rate Rider ("Rider"), Deed of Trust, Truth in Lending Disclosure Statement, and ARM Disclosure. Only the Note and the TILDS are attached to the Complaint. Defendant provides the Deed of Trust, Rider, and ARM Disclosure in connection with their motion to dismiss. These documents are properly considered as they make up the complete set of documents comprising the loan transaction, which is referenced

extensively in the Complaint. *See In re Stac Elcs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of documents whose contents are alleged in the complaint may be considered in connection with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)). Defendant's request is GRANTED as to the Deed of Trust and Adjustable Rate Rider (RJN # 1), as well as the ARM Disclosure (RJN # 5).

Plaintiff's prior Deed of Trust (RJN # 2), the HUD-1 Statement (RJN # 3,) and Plaintiff's note to her lender (RJN # 4) have no bearing on the disposition of the instant motion. Defendant's request as to these documents is DENIED.

## V. DISCUSSION

### A. *Rescission under TILA (Count I)*

In her first cause of action, Plaintiff alleges that the loan's Truth in Lending Act Disclosure statement failed to reveal that the loan would negatively amortize, in contravention of TILA. Plaintiff adds that "other disclosures in the loan documentation make it unclear that Negative Amortization will occur," and claims that the Note misleadingly states that the Interest Rate "has the possibility of increasing," when in reality "it is assured that this rate will increase." (Compl. ¶ 11.) According to Plaintiff, these deficiencies entitle her to rescind the loan under 15 U.S.C. § 1635.

Aurora rejoins that Plaintiff's "reading of TILA is simply wrong." Aurora argues that the alleged failure to adequately disclose the risk of negative amortization is not a "material" disclosure for purposes of extending the three-year statute of

limitations for rescission. According to Aurora, Plaintiff received sufficient disclosures on the variable rate features of her loan, which are the only "material disclosures" under TILA.[4]

The stated purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). "To effectuate TILA's purpose, a court must construe the Act's provisions liberally in favor of the consumer and require absolute compliance by creditors." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (internal quotation omitted). Congress delegated the responsibility of "prescrib[ing] regulations to carry out the purposes of" TILA to the Federal Reserve Board. 15 U.S.C. § 1604(a). In response to this mandate, the Federal Reserve Board promulgated "Regulation Z," 12 C.F.R. § 226; it also published its interpretation of Regulation Z in the "Official Staff Interpretation," 12 C.F.R. pt. 226 Supp. I ("the Commentary"). Courts must defer to the Board's interpretation of TILA unless that interpretation is obviously contrary to the statute. *Hauk*, 552 F.3d at 1118.

Generally, TILA provides that borrowers have until midnight of the third business day following the consummation of a loan transaction to rescind the transaction. 15 U.S.C. § 1635(a). A

---

[4] Plaintiff does not address these arguments in her opposition, arguing only that the disclosures were "misleading."

borrower's right of rescission is extended from three days to three years if the lender (1) fails to provide notice of the borrower's right of rescission or (2) fails to make a material disclosure. 12 C.F.R. § 226.23(a)(3). In this case, Plaintiff does not contend that Aurora failed to provide notice of her right of rescission; the only issue is whether alleged failure to adequately disclose the risk of negative amortization is a "material" disclosure for purposes of the extended three-year statute of limitations for rescission.

Regulation Z provides that "[t]he term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)." 12 C.F.R. § 226.23(a)(3) n.48. The Commentary to this regulation states that only one of the required disclosures regarding variable-rate loans -- that the transaction contains a variable-rate feature -- is considered "material" such that it triggers the extended rescission period:

> Footnote 48 sets forth the material disclosures that must be provided before the rescission period can begin to run. Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature. Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions.

12 C.F.R. Pt. 226, Supp. I ¶ 23(a)(3)-2

Here, the loan documents disclosed that Plaintiff's loan contained a variable-rate feature. Plaintiff's TILDS provides: "VARIABLE RATE FEATURE: Your loan contains a variable-rate feature. Disclosures about the variable rate feature have been provided to

you earlier." The TILDS also disclosed an APR of 7.561%, a $658,011.43 finance charge, and total payments of $1,017,752.53, as well as a payment schedule detailing that 302 payments of $3,080.08 begin on April 1, 2011. There can be no dispute that the loan originator/broker disclosed to Plaintiff that her loan contained a variable-rate feature, that her financing charge was over $650,000, and that her monthly payment would substantially increase over the life of the loan.

Aurora observes that the "Adjustable Rate Rider" and the "Adjustable Rate Note" also detail the variable-rate feature of the loan and how unpaid principal might increase. The Adjustable Rate Rider, signed by Plaintiff and attached to the Deed of Trust, explained that the Note's interest rates were keyed to market fluctuations and directly affected the loan's principal:

> THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED [....]

(Compl., Ex. 1.)

The Adjustable Rate Note also disclosed how the unpaid principal might increase:

> (E) Additions to My Unpaid Principal: Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations discussed in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion, and will add the

difference to my unpaid Principal[.]

(RJN, Doc. 10, Ex. 1.)

Additionally, the "ARM Disclosure Statement" in Plaintiff's Loan Origination File explained that: "If you pay an amount less than the full payment that would not be sufficient to cover the interest due, the difference will be added to your loan amount. This means that the balance of your loan could increase. This is known as *negative amortization*." (RJN, Doc. 10, Ex. 5.) (emphasis added).

Plaintiff's complaint and opposition cite to 12 C.F.R. § 226.19 in support of the argument that "the Truth in Lending Disclosure Statement must include specific explanations of ... negative amortization." (Compl. § 17.) While 12 C.F.R. § 226.19(b) does require disclosures for certain variable rate transactions, it states only that such disclosures "must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier." It does not require such disclosures to be made in the Truth in Lending Disclosure Statement itself.[5] Plaintiff also cites in support of this assertion "Federal Reserve Board Official Staff Commentary, [Regulation Z; Docket No. R-08631] Monday, April 3, 1995." However, this document states no such requirement.

Plaintiff's primary argument in support of her first claim is that rescission is appropriate simply because 12 C.F.R. § 226.19 requires the loan to disclose the possibility of negative

---

[5] As part of her Loan Origination Package Plaintiff signed the ARM Disclosure Statement explaining the mechanics of negative amortization. (See RJN, Doc. 10, Ex. 5.)

amortization. Applying Plaintiff's reasoning, 12 C.F.R. § 226.19 governs whether the three-year statute of limitations for rescission is extended, not 12 C.F.R. § 226.23(a)(3). This is incorrect. Plaintiff's legal basis for rescission is inconsistent with the statutory language of TILA, as well as Ninth Circuit authority. *See Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (citing 12 CFR § 226.23(a)(3) for the proposition that "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation..."); *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) ("Th[e] right of rescission is further explained in Section 226.23(a)(3) of Regulation Z of the Federal Reserve Board.").

Plaintiff's legal analysis appears to incorporate language from the holdings of *Plascencia v. Lending 1st Mortg.*, No. C-07-4485-CW, 2008 WL 1902698 (N.D. Cal. Apr. 28, 2008), *Ralston v. Mortgage Investors Group, Inc.*, No. C-08-536-JF, 2009 WL 688858 (N.D. Cal. Mar. 16, 2009), and *O'Donnell v. Bank of America*, No. C-07-04500-RMW, 2009 WL 765670 (N.D. Cal. Mar. 20, 2009), three cases "recogniz[ing] the viability of claims for failure clearly and conspicuously to disclose the certainty of negative amortization." However, the TILA deficiency claims in *Plascencia*, *Ralston*, and *O'Donnell* involved prayers for damages under TILA (applying the one-year limitation period), not rescission (applying the three-year limitation period). *Plascencia*, *Ralston*, and *O'Donnell* never addressed the issue of "materiality" under § 226.23(a)(3) and are not helpful to Plaintiff's claim for rescission.

Conversely, cases analyzing § 226.23(a)(3)'s materiality

provisions universally hold that a plaintiff is not "entitled to rescind his loan transaction due to defendants' alleged failure to disclose the risk of negative amortization." *See Chetal v. American Home Mortg.*, No. C-09-02727-CRB, 2009 WL 2612312 (N.D. Cal. Aug. 24, 2009) ("Plaintiff has not demonstrated that the loan papers failed to disclose the loan's negative amortization potential [...] Plaintiff cites to no cases in which similar disclosures have been found inadequate."); *Jordan v. Paul Fin., LLC*, --- F. Supp. 2d ----, 2009 WL 1941561 (N.D. Cal. 2009) ("Plaintiff is not entitled to rescind his loan transaction due to defendants' alleged failure to disclose the risk of negative amortization."); *Mandrigues v. World Savings, Inc.*, No. C-07-4497-JF, 2009 WL 160213 (N.D. Cal., Jan. 20, 2009) ("[E]ven if Plaintiffs were to succeed in showing that Defendants failed to provide adequate disclosures of negative amortization, it appears that this failure would not trigger a right of rescission."); *see also McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 150, n.6 (3rd Cir. 2009) (same). Much like her omission to discuss 12 C.F.R. § 226.23(a)(3)'s "materiality" requirements, Plaintiff does not address these cases in her opposition.

In *Jordan v. Paul Financial, LLC*, Plaintiff Jordan filed a putative class action complaint against defendant lenders and brokers. Plaintiff contended that rescission under TILA was available as a remedy for defendants' alleged failure to disclose the risk of negative amortization. 2009 WL 1941561 at *1. Defendants moved for summary judgment on Plaintiff's claim for rescission. Examining a note similar to Plaintiff's "Adjustable Rate Note," Judge Illston of the Northern District held that

alleged failure to adequately disclose the risk of negative amortization is not a material disclosure and "there is no dispute that Paul Financial disclosed to plaintiff that his loan contained a variable-rate feature." *Id.* at *6-7. "[E]ven if plaintiff is correct that defendants otherwise violated TILA by failing to adequately disclose the risk of negative amortization, such a violation is not 'material' and does not entitle plaintiff to the extended three-year statute of limitations for rescission of the loan." *Id.* at *7.

In this case, like *Jordan*, there is no dispute that the loan originator and broker disclosed to Plaintiff that her loan contained a variable-rate feature. Notice of the adjusted-rate features of the loan satisfies § 226.23(a)(3) and ends the "materiality" inquiry. *Id.* Even assuming, *arguendo*, that Defendants otherwise violated TILA by failing to adequately disclose the risk of negative amortization, which is not true, such a violation is not "material" and does not entitle Plaintiff to the extended three-year statute of limitations for rescission of the loan. *See McCutcheon*, 560 F.3d at 150, n.6 ("Even if [Defendant] had failed to send the pre-closing variable-rate disclosures [Plaintiff] would not be entitled to rescind the mortgage at this time [...] TILA provides an extended three-year rescission period only where the mortgagee did not provide material disclosures [...] The only required "material disclosures with respect to the variable-rate nature of the mortgage are a notification that the interest rate and monthly payment may increase and the amount of the single maximum monthly payment, and [Plaintiff] does not deny receiving that information.").

Consistent with § 226.23(a)(3) and the *Jordan*, *Mandrigues*, *Chetal*, and *McCutcheon* cases, Plaintiff is not entitled to rescind her loan transaction due to the alleged failure to disclose the risk of negative amortization. Because Plaintiff has failed to identify a TILA violation as to the disclosure of negative amortization, she has failed to demonstrate a right to rescind the loan within three years, instead of the standard three days. Plaintiff's first cause of action for rescission under TILA is DISMISSED WITH PREJUDICE.

**B. *State Law Claims (Counts II-III)***

Plaintiff's complaint also advances supplemental state law claims for financial elder abuse and a violation of California Business & Professions Code § 7200. However, as stated above, the motion to dismiss is granted with respect to the TILA claim - the only federal claim - in Plaintiff's Complaint.[6] Having determined that Plaintiff's TILA claim is time-barred, supplemental jurisdiction will not be exercised over Plaintiff's remaining state law claims. No judicial resources have been spent on analyzing the merits of such claims, and they raise issues of state law which California state courts can readily address.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to

---

[6] Defendants satisfied § 226.23(a)(3)'s "materiality" requirement by providing notice of the adjusted-rate features of the loan. The loan also included the terms of the loan (e.g., 7.561% APR), the financing charge (over $600,000), and the monthly payment schedule (e.g., 302 payments of $3,080.08 beginning on April 1, 2011). Plaintiff has not demonstrated a right to rescind the loan within three years, instead of the standard three days. Plaintiff's TILA claim is DISMISSED.

exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. *Brown v. Lucky Stores*, 246 F.3d 1182, 1189 (9th Cir. 2001). The decision to retain jurisdiction over state law claims is within the discretion of the district court, weighing factors such as economy, convenience, fairness, and comity. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (citing *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992), cert. denied, 507 U.S. 1004 (1993)). Because this case is at an early stage, there is no federal interest in purely local claims, and the state courts are better equipped to deal with matter of state law. There is no reason to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Imagineering*, 976 F .3d at 1309 (when all federal claims are dismissed before trial, the balance of factors points toward declining to exercise jurisdiction over remaining state law claims) (citations omitted). Plaintiff's supplemental state claims for financial elder abuse and unfair competition are dismissed without prejudice to refiling in state court.

## VI. <u>CONCLUSION</u>

For the reasons stated:

(1) Plaintiff’s first cause of action for rescission under TILA is time-barred and DISMISSED WITH PREJUDICE.

(2) Plaintiff’s supplemental state law causes of action for financial elder abuse and unfair competition are DISMISSED WITHOUT PREJUDICE to refiling in state court.

Defendant Aurora shall submit a form of order consistent with,

and within five (5) days following electronic service of, this memorandum decision.

IT IS SO ORDERED.

**Dated: November 9, 2009** **/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE